[No. 35307.   Department Two.   December 29, 1960.]

J. P. CARBON et al., *Respondents*, v. AMERICAN EQUIPMENT
COMPANY, *Appellant*.[1]

*Joseph P. Delay*, for appellant.

*Witherspoon, Kelley, Davenport & Toole*, for respondents.

HILL, J.—This was an action to collect the unpaid balance
of five thousand dollars on the price of a used rock crusher.
There was a written sales agreement, executed January 22,
1957, which stated that the sale was on an "As Is, Where
Is" basis. At the time of sale the crusher was at Geiger
Field, near Spokane, where the seller (Carbon Brothers)
had operated it during the 1956 season; the last operation

[1] Reported in 358 P. (2d) 128.

having been November 7, 1956. Title passed to the purchaser (American Equipment Company), and it took delivery on or about January 22, 1957.

The defense was that the "drive shaft" was not new, as represented; that because of a defect in the shaft the machine would not function; that the defendant had spent the sum of $4,572.47 in necessary repairs; and the answer consented that judgment be entered against the defendant for the difference between five thousand dollars and the cost of the repairs.

Fraud was alleged by a trial amendment.

The trial court found that no misrepresentations were made by the seller and that no fraud was shown, and entered judgment for the plaintiffs. The defendant appeals on a short record, containing a narrative statement of facts accompanied by a concise statement of points relied upon on the appeal, pursuant to Rule on Appeal 34 (3), RCW Vol. 0. (We shall hereafter comment on the statement of facts used in this case.)

The purchaser (a dealer in heavy equipment, including rock crushers) resold the rock crusher to L. W. Vail Company, Incorporated for six thousand five hundred dollars.

At the request of the purchaser, the rock crusher was loaded by the seller, as a unit, on a truck. It was then transported to the Vail Company quarry near Kennewick, where it was set up for operation. After crushing a small amount of rock, it ceased to operate. On being dismantled, it was ascertained that the drive shaft was cracked and bent. Replacement repairs and cost of transportation totaled almost the amount of the offset claimed in the answer.

If there was any fraud or any express warranty[2], it must have been the result of something J. P. Carbon, representing the seller, said to Al Lapic, representing the purchaser. What was said? The statement of facts is far from helpful. The form used in the narrative statement was not a summation of the testimony of each witness, as is customary,

---

[2]No implied warranty was claimed.

but a running story of the narrator's conception of what the composite evidence established.

The following excerpt was stricken from the proposed statement of facts:

"At the time that Al Lapic observed the 'nick' or impression on the receptacle of the said rock crusher at Geiger Field, Washington, indicating that 'tramp iron' had gone into the crusher, prior to the purchases of said crusher, he inquired from the Carbon Brothers' employees if the shaft was broken or cracked and if the crusher was in good working order and defendant's president, Al Lapic, was assured that the crusher was in good repair and that the shaft was not broken or cracked, and relying on this the purchase was made."

When what the court refused to certify as part of the record is read in connection with the trial court's statement in an oral opinion after the testimony was concluded, the combination makes it clear that there was no misrepresentation and no express warranty.

"I am convinced from the evidence and the argument so far that the Carbon Brothers acted in absolute good faith; in fact, that is conceded by Mr. Lapic himself—rather unusual on a case of this sort, in a case where fraud is alleged, that there is an acknowledgement of absolute good faith and entire confidence and credibility of the opposite party. I think that was said and I am satisfied that the evidence bears it out, without any question.

". . . the evidence shows that, first of all, this machine was operating when they shut it down for the operation terminated in November of 1956; in other words, it operated satisfactorily right up until the time they shut it down.

"*Now, that was, in effect, all that Mr. Pete Carbon said to the defendant, Mr. Lapic.* So there is nothing in the evidence to show to the contrary, and that must be taken as an undisputed fact.

"The only thing in the evidence is that when they started the machine, or tried to start it, about a month later, after being transported down to Pasco and Kennewick, that it didn't operate properly, and the evidence shows on the face of it, by the testimony of Mr. Carbon, both of the Carbons, that many things can happen, such as Mr. Kelley suggested, the evidence showed the transporting in one whole part rather than in the three assemblies or portions of the equip-

ment. That would seem to me to be the safest way, as the evidence showed. And other questions of the knowledge of the operator and those who attempted to start it, the manner in which they started it, the factors of reversing the working parts of it, and so on." (Italics ours.)

The trial court's formal finding, so far as it relates to the claimed defenses of fraud and express warranty, was as follows:

Finding of fact No. 7[3].

"That the plaintiffs, J. P. Carbon and Carl Carbon, acted in absolute good faith; that no fraud, either actual or constructive, was shown; that the Crusher was operating in a satisfactory manner when it was shut down for operation in November 1956; that said J. P. Carbon and Carl Carbon had no knowledge that the shaft of the Crusher was not in good shape when they sold it."

Indicative of the trial court's view of the testimony is its refusal to make a proposed finding submitted by the defendant:

"That plaintiff, through its agent, J. C. Carbon, warranted that the said driveshaft in the said rock crusher was new and in good working order at the time of the sale of said crusher, that in truth and in fact the said driveshaft was not in good working order and was cracked at the time of said sale and time of delivery thereof to the defendant. . . ."

We see nothing in this case to this point, except that the defendant failed to sustain its burden of proving to the trial court either fraud or an express warranty.

We come now to the defendant's procedural complaints:

■ It is urged that there should have been a continuance and a reopening of the case to take the testimony of Fred Rommel. Time was granted to secure an affidavit from Rommel, which was submitted to the trial court. The trial court thereafter denied the motion for a continuance.

---

[3]This finding is supported by the record, and the assignment of error directed against it is without merit. We desire to point out that such an assignment of error was not covered by the appellant's points to be relied upon on appeal, and is not properly before us. If findings of fact are to be attacked on appeal on a short record, the court and opposing counsel must be so advised by the notice of points to be relied upon in the appeal.

Rommel first saw the rock crusher in February, 1957, at the Vail Company quarry in Kennewick. He stated that the manner of the move from Geiger Field to Kennewick would not break the shaft. Due to lack of facilities they moved the crusher from Kennewick to Portland and there dismantled it; and found the shaft had cracks in it and was bent. He thought the cause was tramp iron and stated that when tramp iron goes through a crusher and bends the shaft the crusher "will continue running for quite some time . . . until the bend is accentuated enough to wipe out the eccentric."

The most that can be said of Rommel's affidavit, assuming the truth of all that he said, was that it could be inferred that the shaft was bent when the plaintiffs stopped their operation in November, 1956.

The trial court had held that if it was bent and cracked at that time, the plaintiffs knew nothing about it. We are not concerned with an implied warranty; if there was no express warranty, the defendant's affirmative defense, which the trial court had already indicated had not been proved, was in nowise strengthened by any testimony which Rommel could have presented. The defendant complains that the trial court made no specific finding that there was no express warranty. There was no necessity to find a negative in this case. The trial court specifically refused to make a finding that there was an express warranty and deleted from the statement of facts the words on which the express warranty might have been based. The trial court had stated that "in effect, all that Mr. Pete Carbon said" was that the crusher had "operated satisfactorily right up until the time they shut it down." We do not see how the trial court could have made it clearer—that the defendant had not proved its affirmative defense of express warranty. *Kinnear v. Graham* (1925), 133 Wash. 132, 233 Pac. 304.

There was no abuse of discretion for failure to grant a continuance for testimony that could not change the result of the trial because it added nothing to the testimony on

the issue of fraud or express warranty. *Jackson v. Mercantile Mut. Fire Ins. Co.* (1907), 45 Wash. 244, 88 Pac. 127.

■ The defendant complains that the findings, conclusions, and judgment were signed too precipitously—in that defendant was not given three days' notice of their presentment.

The taking of testimony ended on January 21, 1959, and the defendant presented argument at that time. The trial court, at that time, gave defendant ten days to get an affidavit from Fred Rommel and took the case under advisement, with the understanding that it would consider the facts as alleged in the affidavit as true. A motion for reopening and continuance, supported by the Rommel affidavit, was filed February 6, 1959.

This motion was set for hearing May 13, 1959. The plaintiffs had prepared their proposed findings of fact, conclusions of law, and judgment; these were served on defendant's attorney May 13th. After argument on the motion to reopen and for continuance, and its denial, the plaintiffs' proposed findings, conclusions, and judgment were presented to the trial court. It is assumed that defense counsel was objecting both on the merits and on the basis of failure to give three days' notice of presentation thereof[4]. The plaintiffs urged that an emergency existed inasmuch as the trial judge was leaving on a European trip immediately after May 15th. After argument, the trial court signed the findings, conclusions, and judgment, but announced that the judgment would not be filed until after further argument on Friday, May 15th.

May 15th, the defendant filed its proposed findings, conclusions and judgment, a motion for a new trial, and a motion to vacate the findings, conclusions and judgment which the court had signed May 13th.

---

[4]General Rule of the Superior Court No. 15:

"Unless an emergency is shown to exist, the court will not sign findings of fact and conclusions of law until the defeated party or parties shall have had three days' notice of the time and place of the submission thereof, and shall have been served with copies of the proposed findings and conclusions."

On that day the trial court heard argument on these various motions and on what findings, conclusions, and judgment should be entered. All motions were denied, and the defendant's proposed findings, conclusions, and judgment were refused; and the judgment signed on the 13th, but withheld from filing that defense counsel might again be heard, was filed. This appeal followed.

Defense counsel had no lack of opportunities to make his views known and understood by the trial court. The trial court, under the emergency provision of the rule, did not err in refusing to further delay the entry of the judgment for the repetition of an argument already made. If there was error, there is nothing to indicate that it was prejudicial.

The judgment appealed from is affirmed.

FINLEY, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

